STATE OF CONNECTICUT *v.* JASON SHINN
(AC 15928)

Foti, Lavery and Dupont, Js.

Argued October 1—officially released December 30, 1997

*Francis T. Mandanici,* assistant public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary Nicholson,* assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant appeals from the judgments of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, carrying a dangerous weapon without a permit in violation of General Statutes § 53-206 (a), and threatening in violation of General

Statutes § 53a-62.[1] The defendant claims (1) that the trial court improperly denied his motions for judgment of acquittal concerning the attempt charge because there was insufficient evidence to sustain his conviction on that charge, (2) that the court improperly instructed the jury concerning the planning element of the attempt charge and the defense of intoxication, and (3) that the state's closing argument to the jury impermissibly burdened his constitutional rights to be present at his trial and to testify in his own behalf. We reverse the judgment of conviction on the charge of attempt to commit murder on the ground that the defendant's constitutional right to testify in his own behalf was impermissibly burdened[2] and remand the case for a new trial.

The jury reasonably could have found the facts that follow. In November, 1994, the defendant lived in an apartment with his girlfriend, Lisa Listorti, her infant daughter and her mother. The defendant was then sixteen years old and had been living with Listorti for approximately three years.

On November 8, 1994, the defendant was at home with Listorti, drinking liquor and smoking crack cocaine and marijuana. The defendant had had two violent arguments with Listorti that day. Both times, the police were called and came to the apartment. During the second argument, the defendant became violent, hit Listorti, waved a knife in her face and threatened to kill her.

When the police arrived after the second fight between the defendant and Listorti, the defendant ran

---

[1] The threatening charge concerns Lisa Listorti, a victim different from the victim involved in the attempt to commit murder charge. No claims of impropriety are alleged on appeal as to the crime of threatening or carrying a dangerous weapon.

[2] On the basis of the particular comments of the prosecutor, we conclude that the constitutional right of the defendant to be present at trial is not involved in this case. Also, the defendant's constitutional right to confront the witnesses against him is not involved in this case.

out the back door of the apartment, taking a large kitchen knife. New Haven police officer Roderick McLane, who had responded to the domestic violence call, spoke with Listorti and went to the back of the apartment building where he saw the defendant on the fire escape. From there, the defendant went onto the roof of the building. McLane followed the defendant to the top of the fire escape and, at that point, saw that the defendant was holding a large kitchen knife in a threatening manner. The defendant told McLane, "Don't come up here, I'm going to kill you." At some point, the defendant also threatened to kill himself. McLane remained on the fire escape and called for back-up. In response to McLane's call, Officer John Magoveny arrived.

After some discussion between the officers and the defendant, the defendant agreed to talk to Magoveny and the officer climbed onto the roof. McLane could not see the defendant or Magoveny or hear their conversation from his position on the fire escape. When Magoveny got onto the roof, he saw that the defendant was holding a large kitchen knife. As Magoveny continued to talk to the defendant, the defendant became agitated, began to growl and snarl, and raised the knife above his shoulders in a striking position. The defendant then threatened to kill Magoveny and began to walk quickly toward the officer, holding the knife in a striking position. Magoveny fired two shots from his gun at the defendant, hitting him in the hip and left arm. The defendant fell onto the roof. As Magoveny bent down to assist the defendant, the defendant continued to growl and attempted to thrust the knife at Magoveny. After a brief struggle, Magoveny fired a third shot into the defendant's chest. The defendant then dropped the knife onto the roof. Magoveny picked up the defendant and carried him to the edge of the roof where he was lowered to a waiting ambulance.

We first address the defendant's claim that there was insufficient evidence for the trial court to conclude that the defendant was guilty of attempt to commit murder. The defendant is entitled to a judgment of acquittal on this charge if he prevails on this claim. Specifically, the defendant claims that the state was required to prove that the defendant "planned" his conduct and that the evidence was insufficient to prove the element of "planning." The relevant portion of the attempt statute in this case provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a). Relying on the words "planned" and "culminate" in the statute, the defendant claims that in order to convict him of attempted murder the state was required to demonstrate that *prior* to his act of advancing toward Magoveny while holding the knife in a striking position, he had a plan to kill the officer. The defendant further claims that his intent to kill Magoveny could not have been adopted simultaneously with the actions that constituted the substantial step toward the murder. The defendant fails, however, to provide any case law or other authority for his contention that the attempt statute requires any such prior planning or premeditation.

There are many Connecticut cases defining the elements of an attempt charge, none of which indicates any requisite prior planning. See *State* v. *Gonzalez*, 222 Conn. 718, 725–26, 609 A.2d 1003 (1992); *State* v. *Sharpe*, 195 Conn. 651, 655, 491 A.2d 345 (1985); *State* v. *Russell*, 29 Conn. App. 59, 66, 612 A.2d 809, cert. denied, 224 Conn. 908, 615 A.2d 1049 (1992); *State* v. *Taft*, 25 Conn.

App. 578, 582–83, 595 A.2d. 918, cert. denied, 220 Conn. 921, 597 A.2d 343 (1991). The legislature has defined what it meant by a "substantial step" in § 53a-49 (a). It must be part of a course of conduct that is "planned to culminate in" the crime. The action taken must embody the intended crime, rather than being merely accidental or inadvertent. The "[c]onduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) . . . unless *it is strongly corroborative of the actor's criminal purpose.*" (Emphasis added.) General Statutes § 53a-49 (b). "[T]his standard properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime." *State* v. *Green,* 194 Conn. 258, 277, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). Accordingly, the acts " 'must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the [defendant] at least to be possible of commission by the means adopted.' " *State* v. *Taft,* supra, 582, quoting *State* v. *Mazzadra,* 141 Conn. 731, 736, 109 A.2d 873 (1954).

In the only Connecticut case of which we are aware in which the possibility that there is an element of prior planning in the attempt statute is discussed; *State* v. *Gonzalez,* supra, 222 Conn. 725–26; it was held that the trial court had improperly assumed that some prior plan or premeditation was necessary for criminal liability under § 53a-49 (a) (2). In that case, the trial court had informed the jury that subsection (a) (2) of the attempt statute did not apply because there was no plan or lying in wait leading up to the encounter between the defendant and the victim.[3] *State* v. *Gonzalez,* supra,

---

[3] In *Gonzalez,* the defendant was charged with attempted murder as a result of an encounter between the defendant and the victim on a public road. The defendant got out of his car and shot the victim after the victim allegedly had cut him off. *State* v. *Gonzalez,* supra, 222 Conn. 725. The defendant and the victim had never met prior to the encounter. Id.

724–25. Our Supreme Court stated that the only proof required for a conviction for attempted murder under § 53a-49 (a) (2) was that "the defendant was armed, that he knowingly and intentionally produced a gun during his altercation with the victim, and that he shot the victim with the intent to take the victim's life." Id., 726. The court further stated that "[i]t cannot seriously be argued that if the defendant shot the victim with the intent to cause his death, that the action taken, the shooting of the victim, was not a substantial step in a course of conduct *planned, i.e., intended or designed,* to culminate in the commission of the crime of murder . . . ." (Emphasis added.) Id. Thus, the *Gonzalez* court clearly interpreted the "planning" language in the statute to refer to the conduct, not the ultimate crime, in that the conduct must be planned or intended to culminate in the crime. The only factual distinction between this case and *Gonzalez* relevant to the interpretation of the statutory language quoted is that the victim was actually shot in *Gonzalez.*

The jury in this case reasonably could have found that the defendant raised the knife in a menacing manner and aimed the knife toward Magoveny, and that the defendant's act of advancing toward Magoveny holding a large knife in such a manner and driving the knife toward Magoveny was a substantial step in a course of conduct that was planned to culminate in the murder of Magoveny. We conclude that there is no support in the language of the statute or in the case law interpreting it for the defendant's proposition that to be guilty of attempt pursuant to § 53a-49, the state would have to prove that he planned to murder Magoveny prior to performing acts that constitute a substantial step toward the murder. We hold, therefore, that the evidence was sufficient to support the jury's conviction of the defendant of attempted murder.[4]

---

[4] The defendant also claims that the court's instructions to the jury concerning the planning element of an attempt charge and concerning the

We next address the defendant's claim that the state's closing argument to the jury impermissibly burdened his constitutional right to testify in his own behalf. In the state's rebuttal closing argument to the jury the prosecutor stated: "You heard repeated references this afternoon that Mr. Shinn got up and testified. That is his right, if he wants to do that, he has the perfect right to do that. That is up to him. He also has a right not to testify. Obviously, ladies and gentlemen of the jury, *he heard evidence during the course of the state's case that he felt was, is strong, and so convincing to you, that he felt obligated to get up there and testify* and give you a story. . . . *And if he thought . . . that the state's evidence was too weak in this case, why did he decide to get up here and testify? That's for your judgment to consider.*" (Emphasis added.)

The defendant did not object to the prosecutor's remarks during the prosecutor's rebuttal argument but did, immediately after the argument, and outside the presence of the jury, ask the court for permission to address the jury to respond to the quoted remarks. The court denied the request. Even if that request were insufficient for the preservation of the defendant's claim,[5] we would nevertheless review it under the "exceptional circumstances" doctrine articulated in *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), as refined by *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

In *Golding*, our Supreme Court clarified the standard for appellate review of unpreserved constitutional

---

defense of intoxication were improper. Because both of these claims rely on the defendant's assertion that the attempt statute includes an element of prior planning, which assertion we have concluded is not valid, we need not discuss these claims.

[5] The defendant's request was made at a time when the court could have cured any impropriety because the charge had not yet been given and the jury had not yet begun its deliberations. See *State* v. *Haase*, 243 Conn. 324, 332, 702 A.2d 1187 (1997).

claims. The court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of a constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986); see *Wilson* v. *Cohen*, 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Manfredi*, 17 Conn. App. 602, 621, 555 A.2d 436 (1989), aff'd, 213 Conn. 500, 569 A.2d 506, cert. denied, 498 U.S. 818, 111 S. Ct. 62, 112 L. Ed 2d 37 (1990).

The defendant's claim is reviewable because the claim implicates the defendant's fundamental constitutional right to testify at trial and there is a record sufficient for review. "A record is not inadequate for *Golding* purposes because the trial court has not reached a conclusion of law if the record contains the factual predicates for making such a determination." *State* v. *Torres*, 230 Conn. 372, 378–79, 645 A.2d 529 (1994). Here, the exact words of the argument are known and those words implicate the defendant's constitutional right to testify in his own behalf.

We next turn to the third prong of *Golding*, which requires that a defendant, in order to prevail, must show that the constitutional violation clearly exists and deprived the defendant of a fair trial. Before beginning this discussion, we emphasize that this case is not about a comment of a prosecutor that relates to the *credibility*

of a defendant who takes the stand to testify in his or her own behalf. Rather, this case concerns a comment that relates to the fact that a defendant chose to exercise the constitutional right to testify, not to the content of that testimony.

"The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that 'are essential to due process of law in a fair adversary process.' *Faretta* v. *California*, 422 U.S. 806, 819 n.15 [95 S. Ct. 2525, 45 L. Ed. 2d 562] (1975). The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony . . . . The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor,' . . . *Washington* v. *Texas*, 388 U.S. 14, 17–19 [87 S. Ct. 1920, 18 L. Ed. 2d 1019] (1967). Logically included . . . is a right to testify himself. . . . The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock* v. *Arkansas*, 483 U.S. 44, 51–52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); see, e.g., *Harris* v. *New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971) ("[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so"). A defendant's right to testify is also protected by his rights to a fair trial, to due process, to present a defense, and to be free from compelled testimony under article XVII of the amendments to the Connecticut constitution and under article first, § 8, of the Connecticut constitution.[6]

---

[6] Article first, §8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . No person shall be . . . deprived of . . . liberty . . . without due process of law . . . ."

It is well settled that a constitutional violation may be established even though there has not been a complete deprivation of that right. A constitutional violation may result "when a constitutional right has been impermissibly burdened or impaired by virtue of state action that unnecessarily chills or penalizes the free exercise of the right." *State* v. *Cassidy*, 236 Conn. 112, 126, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996); see, e.g., *Shapiro* v. *Thompson*, 394 U.S. 618, 629–31, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969) (state's conditioning receipt of welfare benefits on duration of residency impermissibly burdened constitutional right to travel); *United States* v. *Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968) (statute permitting imposition of death penalty only on defendants convicted after trial and not on those who pleaded guilty impermissibly impaired constitutional right to trial); *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) ("for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional' ").

We conclude that this case is similar to and governed by *State* v. *Cassidy*, supra, 236 Conn. 120, in which the court held that the defendant's constitutional right to be present throughout his trial was violated by the prosecutor's closing argument.[7] The remarks in that case were that "the defendant, because he was present in court throughout the trial, was able to tailor his testimony to that of the state's witnesses who, in contrast to the defendant, were subject to the trial court's sequestration order."[8] Id. The court held that the defendant

---

[7] *State* v. *Cassidy*, supra, 236 Conn. 128 n.16, determined that the prosecutor's argument "also burdened the defendant's exercise of his constitutional right to testify in his own behalf . . . [but concluded that] [b]ecause the defendant has not raised this claim . . . we do not base our decision on it."

[8] In *Cassidy*, the prosecutor made the following statement: "Now also consider, you notice that the witnesses come in and out and there's no

had a constitutional right to be present in the courtroom
and to face his accusers, and that the prosecutor's state-
ment "placed too high a price on the defendant's exer-
cise" of that right. Id., 125. The court stated that, in
arguing to the jury that the defendant had doctored his
testimony simply because he chose to be present during
the trial, "the prosecutor invited the jury to draw an
inference adverse to the defendant solely because of
the defendant's exercise of his constitutional right to
confront the witnesses against him." Id., 127–28. The
court concluded that "[i]nviting the fact finder to draw
an inference adverse to a defendant solely on account
of the defendant's assertion of a constitutional right
impermissibly burdens the free exercise of that right
and, therefore, may not be tolerated." Id., 127; see, e.g.,
*Zant* v. *Stephens*, 462 U.S. 862, 885, 103 S. Ct. 2733, 77
L. Ed. 2d 235 (1983) (aggravating factor invalid if it
"authorizes a jury to draw adverse inferences from con-
duct that is constitutionally protected"); *Griffin* v. *Cali-
fornia*, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d
106 (1965) (statement by court or prosecutor inviting
jury to draw adverse inference from defendant's failure
to testify violates constitution as "penalty imposed by
courts for exercising a constitutional privilege").

The *Cassidy* court acknowledged, as is true in the
present case, that the objectionable comments by the
prosecutor were relatively brief. The court further
acknowledged that "we have in the past rejected due
process claims predicated on a single questionable pros-
ecutorial statement." (Internal quotation marks omit-
ted.) *State* v. *Cassidy*, supra, 236 Conn. 130–31. The

witnesses in court, while the other witnesses are testifying, and that ensures
that you're going to hear just that person's version of the story. They're not
going to doctor it up to fit the other person's version of the story. There's
one witness in this case who heard every other witness testify. He heard
the whole story before he told you the story. That means when the defendant
took the stand, and I would submit to you that during the three days of
trial, hearing all of the witnesses, the defendant had ample time to doctor
up his version of the story." *State* v. *Cassidy*, supra, 236 Conn. 121.

court distinguished the *Cassidy* case from cases where no due process violation resulted from brief objectionable comments, however, noting that "[i]n most such cases . . . the challenged argument did not directly implicate a constitutional right . . . [whereas the remarks in the present case] struck at the heart of the critical issue in a closely contested case [and] infringed upon the defendant's constitutional right . . . ." Id., 131; see also *Agard* v. *Portuondo*, 117 F.3d 696, 713 (2d Cir. 1997) ("[a] comment which directly disparages the defendant's exercise of constitutional rights can be severe misconduct regardless of its length").

The *Cassidy* court also acknowledged the fact that, in choosing to testify, the defendant put his credibility at issue, thereby subjecting himself to critical cross-examination. Accordingly, the court noted that the prosecutor would have been free to challenge the defendant's version of the facts and to argue that the defendant had tailored his testimony to fit the state's case, provided that such an argument was "linked solely to the evidence and not, either directly or indirectly, to the defendant's presence at trial [i.e., his exercise of a constitutional right]." *State* v. *Cassidy*, supra, 236 Conn. 128 n.17.

The principles of *Cassidy* control this case, by which we are bound as an intermediate appellate court. In the present case, the prosecutor argued to the jury that the defendant exercised his constitutional right to testify because he and his attorney believed that the state's case was so "strong, and so convincing to you, that he felt obligated to get up there and . . . give you a story . . . [a]nd if he thought . . . that the state's evidence was too weak in this case, why did he decide to get up here and testify?" The state essentially argued, therefore, that the defendant exercised his constitutional right to testify at his trial because the state's evidence

so strongly supported a finding of guilt that he felt compelled to respond. The defendant, however, might have felt compelled to testify in his own behalf because he believed that his testimony would strongly support a finding of not guilty. The prosecutor's statements are based on the assumption that defendants who testify in their own behalf acknowledge that the state's case is so strong that, unless they testify they would be found guilty.

The prosecutor in this case, as a consequence of his remarks, invited the jury to draw an adverse inference from the very fact of the defendant's decision to exercise his fundamental right to testify in his own behalf. The remarks were not objectionable because they addressed the content or credibility of the testimony, but because, as was true in *Cassidy*, the comments directly implicated an important constitutional right of the defendant. Only he and the officer were on the roof during the encounter, and the defendant's version of the encounter related to the critical issue to be determined in the case, namely, whether the defendant intentionally did or omitted to do anything "under the circumstances *as he believe[d] them to be,* [was] an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." (Emphasis added.) General Statutes § 53a-49 (a) (2). The statements in the present case were not merely comments on the credibility of the defendant's testimony, but rather were statements that directly linked his decision to testify with his guilt. Such comments are impermissible, and we hold that they were a denial of the defendant's due process rights.

Finally, the state argues in its brief that the prosecutor's arguments in this case were permissible because unlike in *Cassidy*, the prosecutor's remarks were made during his rebuttal argument in response to the defen-

dant's closing argument. Specifically, the state contends that the prosecutor was responding to the defendant's argument that the defendant's testimony was the natural and unrehearsed statements of an inexperienced "seventeen year old kid" and, therefore, should be believed. While courts have held that due process will not prevent a prosecutor from responding fairly to a defendant's argument, a prosecutor may not treat a defendant's exercise of a constitutional right as evidence of guilt under the guise of attacking the defendant's credibility. Cf. *United States* v. *Robinson*, 485 U.S. 25, 28, 32, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988) (prosecutor's statement that defendant could have gotten up and told his story did not infringe on defendant's fifth amendment rights where statement was direct response to defense counsel's argument that prosecution "has not allowed the defendants an opportunity to explain").

This is not a case where the prosecutor was responding to the defendant's own argument in his closing statement that directly implicated the defendant's constitutional right to testify, such as, for example, an argument by the defendant that the defendant must have been telling the truth or he would not have testified. Cf. id., 33. Instead, the defendant's closing argument merely urged the jury to believe the defendant's testimony. Although it is true that the prosecution may comment on the veracity of a defendant, it may not constitutionally make a negative comment on the defendant's very act of taking the stand.

A defendant's decision to exercise his right to testify is analogous to a defendant's decision to exercise his fifth amendment right *not* to testify. "It is well settled that comment by the prosecuting attorney or the trial court on the defendant's failure to testify is prohibited

by the fifth amendment to the United States constitution." *State* v. *Arline*, 223 Conn. 52, 66, 612 A.2d 755 (1992), citing *Griffin* v. *California*, supra, 380 U.S. 614.[9]

The United States Court of Appeals for the Second Circuit has extended the holding in *Griffin* to prohibit prosecutorial comment on a defendant's decision to testify. In a 1997 case, *Agard* v. *Portuondo*, supra, 117 F.3d 712, the Second Circuit relied on *Griffin* to hold that "commentary which chills the defendant's right to testify on his own behalf is unconstitutional." Although the Connecticut Supreme Court has not yet had an opportunity to comment on *Agard*, the *Agard* case is consistent with the principles of *Cassidy*.

The *Agard* court held that closing arguments that invited the jury to infer that the defendant exercised his constitutional right to be present in the courtroom during his trial in order to doctor his testimony violated the defendant's "right to testify on his own behalf and correspondingly the Fifth, Sixth and Fourteenth Amendments." Id. Similarly, in *United States* v. *Freeman*, 514 F.2d 1314, 1318 (D.C. Cir. 1975), the court relied on an analogy to *Griffin* and held that "the prosecutor's reference [to the defendant's decision to take the stand as indicative of his guilt] impinged impermissibly on his right to take the stand . . . ." In holding that the prosecutor's comments constituted error, the court stated that the defendant's decision to take the stand had "no rational bearing" either on the defendant's guilt

---

[9] Our legislature has statutorily recognized this right by enacting General Statutes § 54-84, which provides: "(a) Any person on trial for a crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

or on his credibility, and the use of "[s]uch a tactic does not become the prosecutor, as an exemplar of fairness and justice in the criminal system." Id., 1319; see also *Commonwealth* v. *Stout*, 356 Mass. 237, 249 N.E.2d 12 (1969) (holding comment on defendant's decision to take stand improper).

Having determined that the closing remarks by the prosecutor were improper, we next, in accord with the fourth prong of *Golding*, consider whether the state has proved beyond a reasonable doubt that the error was harmless. Viewing the prosecutor's comments in the context of the entire trial, we conclude that the state has failed to meet its burden.

The court in *Cassidy* held that the prosecutor's impermissible remarks regarding the defendant's presence in the courtroom during the trial were harmful constitutional error even though "the prosecutor's objectionable comments were relatively brief and not made in bad faith." *State* v. *Cassidy*, supra, 236 Conn. 130. In concluding that the statements were not harmless error, the court relied on the fact that the defendant and the victim were the only witnesses with firsthand knowledge of the crime and, thus, credibility was unquestionably a central issue at trial. Id., 129–30. Similarly, in the present case, the defendant and the victim, Magoveny, were the only witnesses with firsthand knowledge of the events pertinent to the attempted murder charge. The critical question to be resolved by the jury, therefore, was which of the two eyewitnesses was telling the truth.[10] Furthermore, the crime of which the defendant was accused requires proof that the defendant intentionally committed an act that would

---

[10] The defendant and Magoveny disagreed on several critical facts in this case. Specifically, the two differed on the issues of when Magoveny unholstered his weapon, in which hand the defendant carried the knife and whether the defendant dropped the knife before or after Magoveny fired the third shot into the defendant's chest.

culminate in the commission of a crime "under the circumstances *as the defendant* believe[d] them to be." The defendant was best able to testify as to the circumstances as he believed them to be, although, of course, the jury need not have found his testimony credible.

The prosecutor's argument, which served to link the discrediting of the defendant's testimony with a negative comment on the very fact that the defendant did testify, bore on the critical issue to be resolved by the jury. Given the particular facts of this case, we are not persuaded beyond a reasonable doubt that the jury was not influenced adversely by the prosecutor's improper closing argument. The remarks were not harmless beyond a reasonable doubt and, accordingly, the defendant is entitled to a new trial on the charge of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) and 53a-54a.

The judgment is reversed only as to the conviction of attempt to commit murder and the case is remanded for a new trial on that charge.[11]

In this opinion LAVERY, J., concurred.

FOTI, J., dissenting. I must respectfully disagree with the majority opinion that statements made by the prosecutor in his rebuttal closing argument to the jury impermissibly burdened the defendant's constitutional right to testify in his own behalf. The defendant did not object to any of the comments made by the prosecutor and has not satisfied the *Evans-Golding* test to allow this court to review his unpreserved claim. Furthermore, the defendant's claim is distinguishable from that decided by our Supreme Court in *State* v. *Cassidy*, 236 Conn. 112, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996).

---

[11] The defendant's convictions of violating §§ 53-206 (a) and 53a-62 remain undisturbed.

The defendant concedes that his claim is unpreserved but argues that it is reviewable under both "exceptional circumstances" discussed in *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).[1] The defendant argues that his claim satisfies the first exceptional circumstance because our Supreme Court's decision in *Cassidy*, on which he relies to make out a claim of prosecutorial error, was decided after his conviction. I do not agree that *Cassidy* created a new constitutional right not readily foreseeable to the defendant at the time of trial. Contrary to the defendant's contention, *Cassidy* did not create a new constitutional right, but rather applied a known constitutional right to the particular set of facts present in that case and found a violation of that known right.

The constitutional right at issue in *Cassidy* was the defendant's right to be present throughout the trial. In *Cassidy*, the court relied on several United States Supreme Court decisions to establish that the right of a defendant to be physically present in the courtroom is fundamental. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965) (right to confrontation fundamental to fair trial under federal constitution); *Coy* v. *Iowa*, 487 U.S. 1012, 1018–19, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988), quoting *Lee* v. *Illinois*, 476 U.S. 530, 540, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986) (right to confront one's accusers so deeply rooted in "human feelings of what is necessary for fairness [that] the right of confrontation 'contributes to the establishment of a system of criminal justice in which

---

[1] In *Evans*, the court stated: "There appear, then, to exist only two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered by this court. The first is . . . where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second 'exceptional circumstance' may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." (Citation omitted.) *State* v. *Evans*, supra, 165 Conn. 70.

the perception as well as the reality of fairness prevails' "). The cases cited by the court in *Cassidy* clearly recognized the right of a defendant to be present at trial and were decided before the trial in this case.[2] Moreover, in *Cassidy*, "before the trial court had commenced its instructions to the jury, the defendant moved for a mistrial or, in the alternative, for a curative instruction, claiming that the prosecutor's argument had improperly infringed upon his constitutional right to be present throughout the trial." *State* v. *Cassidy*, supra, 236 Conn. 122. Thus, the right was readily foreseeable to the defendant in *Cassidy*. Because our Supreme Court's decision in *Cassidy* did not create a new constitutional right not readily foreseeable to the defendant at the time of trial, I would decline to review the defendant's unpreserved claim under the first exceptional circumstance articulated by the court in *Evans*.

The defendant also argues that his claim is reviewable under the second exceptional circumstance of *Evans*, as refined by *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] This court has consistently held that "[w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the

---

[2] In addition to the United States Supreme Court cases cited by the court in *Cassidy*, several Connecticut cases have also considered the defendant's right to be present at trial and to be confronted with the witnesses against him. See, e.g., *State* v. *Bonello*, 210 Conn. 51, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 2103, 104 L. Ed. 2d 664 (1989); *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988).

[3] In *Golding*, the court held "that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . ."

"In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . [W]e must review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Villanueva,* 44 Conn. App. 457, 461–62, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997), quoting *State* v. *Hansen,* 39 Conn. App. 384, 395, 666 A.2d 421, cert. denied, 235 Conn 928, 667 A.2d 554 (1995).

In this case, the prosecutor's comments were not so egregious as to deprive the defendant of a fair trial, and were made in response to defense counsel's final argument, much of which referred to the defendant's sincerity, credibility and willingness to testify, and to the weaknesses in the state's case.[4] In addition, the comments were brief and did not constitute a "pattern of misconduct pervasive throughout the trial." (Internal quotation marks omitted.) *State* v. *Hansen,* supra, 39 Conn. App. 395. Although the court in *Cassidy* granted the defendant a new trial on the basis of similarly brief comments by the prosecutor, its decision was premised

[4] "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court . . . has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument. . . ." *State* v. *Williams,* 204 Conn. 523, 540, 529 A.2d 653 (1987).

on the fact that the challenged argument directly implicated the defendant's constitutional right to be present throughout the trial and was so flagrant as to prompt an objection by the defendant. Here, the prosecutor's arguments did not directly implicate the defendant's rights either to be present throughout the trial or to testify in his own behalf. In fact, the prosecutor expressly stated that the defendant has a right to testify.[5] Furthermore, the defendant failed to raise an objection to the prosecutor's comments. I would decline to review the defendant's claim of prosecutorial error under *Golding* because the argument by the prosecutor was neither so egregious as to deprive the defendant of a fair trial nor is the claim of constitutional magnitude.

Even if I were to review this claim, however, I would conclude that the defendant has failed to demonstrate that the prosecutor's closing argument impermissibly burdened his constitutional rights to be present throughout the trial or to testify in his own behalf. The defendant claims that the prosecutor argued that the defendant's act of testifying was really an act of misconduct that showed consciousness of guilt and asked the jury to draw an adverse inference from that act.

During closing arguments, defense counsel challenged the credibility of Officer John Magoveny's testimony and argued that the state's case was politically motivated. In response, the prosecutor referred to the fact that the defendant felt compelled to testify in his own defense. These comments may be distinguished from those held to be improper in *Cassidy*. In that case, the prosecutor argued that the defendant had "doctor[ed] up" his testimony as a result of having been present in the courtroom during the trial. Our Supreme

---

[5] In his rebuttal closing argument, the prosecutor stated: "[Y]ou heard repeated references this afternoon [to the fact] that Mr. Shinn got up and testified. That is his right, if he wants to do that, he has the perfect right to do that. That is up to him. He also has a right not to testify."

Court held that the prosecutor's comments were improper "because [they] unfairly penalized the defendant for asserting his constitutionally protected right to confront his accusers at trial"; *State* v. *Cassidy*, supra, 236 Conn. 129; and invited the jury to draw an inference adverse to the defendant solely on account of the defendant's assertion of his constitutional right.

Here, in response to comments by defense counsel that characterized Magoveny's testimony as unworthy of belief, the prosecutor referred to the fact that the defendant testified in order to refute Magoveny's testimony. Those comments did not ask the jury to infer guilt because the defendant testified, but merely pointed out the fact that the case revolved around the credibility of the defendant and Magoveny. "It is well established that once an accused takes the stand and testifies his credibility is subject to scrutiny and close examination." *State* v. *McClendon*, 199 Conn. 5, 12, 505 A.2d 685 (1986). Moreover, rather than ask the jury to draw an adverse inference from the defendant's assertion of his right to testify, the prosecutor specifically stated that the defendant had a right to testify. I would conclude that the prosecutor's comments were not an unconstitutional infringement of the defendant's right to testify in his own behalf.

The defendant has also failed to establish that the prosecutor's comments violated his right to be present throughout the trial. The prosecutor, during his rebuttal closing argument to the jury, made the following statement: "Obviously . . . [the defendant] heard evidence during the course of the state's case that he felt was . . . strong, and so convincing to you, that he felt obligated to get up there and testify and give you a story. . . ." This statement merely pointed out the obvious fact that the defendant chose to testify after listening to the evidence presented by the state. Furthermore, this statement is distinguishable from the statement made in *Cassidy*.

Unlike the statement made by the prosecutor in *Cassidy,* here the prosecutor did not imply that the defendant had altered his testimony as a result of having been present in the courtroom and having heard the testimony of previous witnesses. The prosecutor herein also did not mislead the jury. In *Cassidy,* the prosecutor implied that the state's witnesses might have remained in court to hear all of the evidence, but did not, obviously omitting to tell the jury that the witnesses were sequestered and could not, by order of the court, be present other than to testify. I find nothing in the prosecutor's statement either misleading or that would in any way burden the defendant's right to be present in the courtroom.

I would affirm the judgment of the trial court and, therefore, respectfully dissent.