STATE OF CONNECTICUT *v.* KEVIN D. FISHER
(AC 23090)

Foti, Flynn and McLachlan, Js.

Argued January 15—officially released April 13, 2004

*Alice Osedach-Powers*, assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Adam B. Scott*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Kevin D. Fisher, appeals from the judgment of conviction, rendered by the trial court following a jury trial, of larceny in the sixth degree in violation of General Statutes § 53a-125b.[1] On appeal, the defendant claims that (1) the court's unsolicited advice to him during trial infringed on his constitutional right to testify, (2) the court's ruling on his motion in limine had a chilling effect on his right to testify and (3) the court improperly admitted certain evidence of his use of illegal drugs. We affirm the judgment of the trial court.

The jury reasonably could have found that on August 8, 2001, the defendant was in the Filene's department store located at the Buckland Hills Mall in Manchester. The defendant was walking throughout the store while carrying a backpack and a shopping bag from another store. He eventually went to the men's clothing department, where he knocked several pairs of men's pants off a counter display and concealed three pairs of these pants, each having a value of $65, in his empty shopping bag. The defendant spent a brief period of time in other departments before exiting the store via an entrance

---

[1] The defendant also was convicted, under a part B information, of being a persistent larceny offender.

to the mall. The defendant did not pay for the pants in his bag.

A Filene's sales associate had observed the defendant acting suspiciously. The associate alerted Brenda Cavin, an agent in Filene's loss prevention department, who thereafter observed and videotaped the defendant's activities via store surveillance equipment. Having observed the defendant conceal the pants and then exit the store, Cavin followed the defendant to an adjacent camera store located in the mall. Cavin stopped the defendant as he exited the camera store, identified herself, explained her suspicions and accompanied the defendant back to Filene's. The defendant initially refused to give Cavin his shopping bag and denied having stolen anything.[2] Two other loss prevention agents, as well as a Manchester police officer, assisted Cavin when the defendant became uncooperative with her investigation. The defendant ultimately gave Cavin the bag, which contained the pants that he had stolen from Filene's, as well as other clothing that he had stolen from JC Penney, another of the mall's anchor stores. The defendant's arrest followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court's unsolicited advice to him during trial infringed on his constitutional right to testify. We disagree.

The record reflects that during the trial, the defendant appeared pro se, assisted by standby counsel. The state presented evidence and rested its case on January 24, 2002. The defendant indicated that he rested his case, as well. The court instructed the jury to expect to hear closing arguments and that it would be entrusted with

---

[2] The defendant maintained that he possessed the pants lawfully and that he intended either to return or to exchange them.

the case on the following day. When court began on the next day, January 25, 2002, the defendant's standby counsel, Brian S. Karpe, informed the court that the defendant wanted to testify. The following colloquy ensued outside of the jury's presence:

"The Court: I was advised by [standby counsel] that now you desire to take the [witness] stand. Is that correct, sir?

"[The Defendant]: That's correct, Your Honor.

"The Court: Okay. What has changed between yesterday and today?

"[The Defendant]: Well, I realize that I actually, you know, didn't intend to, you know, take the [witness] stand, but I felt as though we're presenting all of the evidence [and] I think my testimony will be essential in this matter at this particular time under the condition of the same limine motions, arrangements. I misunderstood as to the prosecutor resting his case. I thought I was so bad, I was thinking that you had me qualified for a psychiatric evaluation this morning. I wasn't sure where we were going with that. I had to clarify that with counsel.

"The Court: Mr. Fisher, I'm sure you perfectly well understood when [the state] rested that the ball was in your court, and it was time for you to go forward. Don't try and bamboozle me on that one.

"[The Defendant]: Well, okay, Your Honor.

"The Court: Just tell me—put the reasons on the record why you now want to take the [witness] stand.

"[The Defendant]: Well, I feel as though that my testimony would be essential at this point, Your Honor.

"The Court: Okay. . . . [D]o you want to be heard on this?

"[The Prosecutor]: Obviously, his choice was made yesterday, Your Honor. The state relied on that choice in preparation of its case. I have not prepared a cross-examination of the defendant. I don't have one prepared at this time. This catches the state off guard, Your Honor.

"The Court: Mr. Fisher, if you are allowed to take the [witness] stand, you have to understand, sir. Well, first of all, let me tell you, you have a constitutional right not to testify, which I am sure you are perfectly well aware.

"[The Defendant]: I'm aware of that, Your Honor.

"The Court: Okay. And by getting on the [witness] stand, you are waiving that right not to testify and not to be compelled to incriminate yourself, and you also, more seriously, are exposing yourself to cross-examination by the [prosecutor]. And that cross-examination may not only be limited to the facts of this case of August 8, [2001], but the state may want to present evidence, and I may allow evidence of your prior convictions as well as any other prior misconduct that you have committed relevant to the issues to be decided in this case. So, before you make that decision to get on the [witness] stand, you need to understand that it's not going to be limited solely to the issues of what took place on August 8 or the facts of what took place on August 8, but it may be a more encompassing cross-examination than you anticipate. Do you understand that, sir?

"[The Defendant]: I do, Your Honor, and I was hoping that maybe I would be able to be aware, I mean aware of what specifically we are going to use during cross-examination.

"The Court: Okay. Well, I anticipate if you get on the [witness] stand, the state will want to cross-examine

you with your prior criminal convictions. Is that correct . . . ?

"[The Prosecutor]: That is correct, Your Honor.

"[The Defendant]: Is that in its entirety, or maybe one or two criminal matters? And if so, which one? I think that would be important for me to know and have to be prepared and, specifically, as to what he is going to say as far as my addiction.

"The Court: Well, to some extent it depends on what you say [when] you're up here. If you open the door either intentionally or unintentionally to areas that you don't want him to get into, he may be allowed to get into those areas whether you want him to or not because you have opened the door. So, we can't tell you, and I'm sure the state can't tell you precisely what the exact cross-examination would be if you got on the [witness] stand. But I can tell you, sir, you're running a big risk here, but that's your decision to make, not mine. So, if you feel that you want to get back on the [witness] stand or get on the [witness] stand, that's really your call.

"[The Defendant]: Your Honor, I believe I would under specific limiting conditions.

"The Court: Okay. What are those conditions?

"[The Defendant]: That I'm made aware of the specific charges he's going to confront me with as to the robberies or what have you, instead of my, you know, my entire record, maybe. Which ones is he intending to target in general?

"The Court: Okay. You will not be allowed to—if he cross-examines you with evidence of a prior, for example, robbery conviction—

"[The Defendant]: Right.

"The Court:—and you admit that on the [witness] stand—

"[The Defendant]: Right.

"The Court:—or even if you don't admit it, he can introduce a certified copy.

"[The Defendant]: Absolutely, Your Honor.

"The Court: If that comes into evidence, either through your admission or through a certified copy, you will not be allowed to go on and explain to the jury the facts surrounding that robbery.

"[The Defendant]: No. I realize that."

The defendant then asked the court which of his prior convictions the state "may decide to use." The court and the prosecutor engaged in a short discussion on the record, and the court informed the defendant that insofar as his Connecticut criminal record was concerned, the state would likely present evidence concerning two prior robbery convictions, a conviction for larceny in the third degree and two prior convictions as a persistent larceny offender. The prosecutor stated: "And obviously, if the defendant opens the door with regard to his entire criminal record, then I would proceed as I believe proper, Your Honor, noting that he has convictions out of this state also and in other states . . . ."

The court denied the defendant's motion to disallow evidence concerning certain of his larceny convictions that were fewer than ten years old. The following colloquy occurred:

"The Court: As I indicated earlier, credibility is a highly relevant issue in this case, especially now because you're taking the [witness] stand and because what I've heard so far of your defense. These convictions are highly significant on the issue of credibility

because they involve larceny and theft. And as a result, the state will be allowed to use them in cross-examining, all five of them. I'll just say [that] if you testify, sir, and since the state is not prepared to cross-examine you, I'm going to give the state a short continuance to allow the [prosecutor] to prepare for your cross-examination.

"[The Defendant]: What do you mean by short, Your Honor, a week?

"The Court: I don't know. It depends on what turns up in your testimony, and it depends on how long [the prosecutor] thinks he needs to properly cross-examine you. If you had said to us yesterday, sir, that you intended to take the [witness] stand and you put us on notice yesterday, there would not be this delay. It's your fault, and it's on your shoulders. So, I'm going to give the state reasonable time to get ready to cross-examine you. And if that means that they dig up more dirt in the meantime, then that's what you're exposing yourself to by getting on the [witness] stand.

"[The Defendant]: Your Honor, I'll just go with the jury.

"The Court: Okay. So, you want to go straight to closing argument?

"[The Defendant]: That's correct."

The defendant now claims that the court "engaged in a lengthy colloquy with the defendant, strongly warning him against testifying" and that the court's statements had the effect of dissuading him from exercising his right to testify. The defendant claims that "[t]he court's unwarranted interference with the defendant's choice" violated his federal and state constitutional rights. The defendant argues that the court "attempted to sway" him from testifying, implied that he should not testify and improperly assumed "the role of defense counsel." The defendant acknowledges that he did not raise the issue before the trial court, but seeks review under the

doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or under the plain error doctrine codified in Practice Book § 60-5.

We will reach the merits of the defendant's claim under *Golding* because the record is adequate and a claim that the court impermissibly infringed on the defendant's right to testify is of constitutional magnitude. Nevertheless, we conclude that the claim fails under *Golding*'s third prong because the defendant has failed to demonstrate that a constitutional violation clearly exists and clearly deprived him of a fair trial.[3]

"The right to testify on one's own behalf at a criminal trial has sources in several provisions of the [United States] Constitution. It is one of the rights that are essential to due process of law in a fair adversary process. . . . The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony . . . . The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call witnesses in his favor . . . . Logically included . . . is a right to testify himself. . . . The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony. . . . A defendant's right to testify is also protected by his rights to a fair trial, to due process, to present a defense, and to be free from compelled

---

[3] The defendant also claims that the court's actions infringed on the rights conferred on him by General Statutes § 54-84. We will not review his claim under *Golding* because it relates to a statutory, not a constitutional, right. The claim also is inappropriate for review under the plain error doctrine. Such review would be warranted if the court had failed "to follow or apply a statute that is clearly relevant to the case"; *State* v. *Groppi*, 81 Conn. App. 310, 317, 840 A.2d 42 (2004); or if the claimed error was "so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Green*, 81 Conn. App. 152, 161, 838 A.2d 1030 (2004). Neither situation is present here.

testimony under article XVII of the amendments to the Connecticut constitution and under article first, § 8, of the Connecticut constitution." (Citations omitted; internal quotation marks omitted.) *State* v. *Shinn*, 47 Conn. App. 401, 410, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998).

The defendant does not claim that the court completely deprived him of his right to testify. "It is well settled [however] that a violation of constitutional magnitude may be established even though there has not been a complete abridgement or deprivation of the right. A constitutional violation may result, therefore, when a constitutional right has been impermissibly burdened or impaired by virtue of state action that unnecessarily chills or penalizes the free exercise of the right." (Internal quotation marks omitted.) *State* v. *Alexander*, 50 Conn. App. 242, 249, 718 A.2d 66 (1998), rev'd in part on other grounds, 254 Conn. 290, 755 A.2d 868 (2000).

Having reviewed the challenged remarks, we conclude that they did not have an adverse effect on the defendant's exercise of his right to testify. The unique procedural circumstances of this case were the impetus for the court's discussion with the defendant concerning his decision to testify. That is, the defendant, who was appearing pro se, had represented a day earlier that he would neither testify nor present any evidence. Relying on the defendant's representations, the court informed the parties and the jury that closing arguments would follow. The defendant's request to testify, therefore, amounted to a request for the court to open the evidence to permit additional testimony, a request that implicated the court's sound discretion. See *State* v. *Carter*, 228 Conn. 412, 426–27, 636 A.2d 821 (1994).

The court, exercising its inherent control of the proceedings before it and mindful that it must preside over a trial that is fair to both parties, properly inquired of

the defendant why he sought to open the evidence. The defendant's right to present a defense was "subject to appropriate supervision by the trial court in accordance with established rules of procedure and evidence;" id., 427; and there is no claim that the court deprived the defendant of that fundamental right. The court did not deny the defendant's request to open the evidence; it informed the defendant that his unexpected change in trial strategy would cause a delay in the proceedings because, if he wanted to testify, the court would grant a reasonable continuance to permit the state to prepare for his cross-examination.

The court's inquiry and remarks were not of such a coercive or suggestive nature so as to lead us to conclude that they likely dissuaded the defendant from testifying. The court did not, in any way, penalize the defendant for choosing to testify.[4] The court discussed the consequences of a decision to testify partially in response to the defendant's inquiries of what the state could delve into in its cross-examination of him. The court informed the defendant of the prior criminal matters the state likely would explore during cross-examination but did not tell him that he either should or should not testify. Instead, the court stated that it was the defendant's "decision to make" and that it was the defendant's "call."

Although we conclude that the court's remarks were neither coercive nor harmful, we nevertheless conclude that in several respects, they were inappropriate. The

---

[4] The defendant also claims that by advising him concerning his decision to testify, the court assumed the role of defense counsel. We disagree. The record reflects that the court did not provide purely unsolicited advice. The court inquired of the defendant because the defendant sought to open the evidence. Further, the court discussed the scope of cross-examination with the defendant, in part, because he had asked the court to advise him as to which of his prior criminal convictions might be the subject of cross-examination.

accused has the ultimate authority to make the fundamental decision to testify. *State* v. *Stewart*, 64 Conn. App. 340, 352, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). "[W]hether the accused will testify is primarily a matter of trial strategy to be decided between the defendant and his attorney." (Internal quotation marks omitted.) *State* v. *Hobson*, 68 Conn. App. 40, 45, 789 A.2d 557, cert. denied, 260 Conn. 910, 796 A.2d 557 (2002). The court is not required to canvass a defendant concerning the exercise of that right. Id.

We look disfavorably on the scope and tenor of the court's inquiry of and remarks to the defendant. Beyond responding to the defendant's inquiry concerning the matters the state could use during its cross-examination, the court discussed generally the tactical disadvantages of testifying. The court stated that the defendant was "running a big risk" by testifying and that if it gave the state time to prepare for cross-examination, the state might "dig up more dirt [on the defendant] in the meantime . . . ."

"The trial court should never assume a position of advocacy, real or apparent, in a case before it, and should avoid any displays of hostility or skepticism toward the defendant's case . . . . A fine line separates proper and improper judicial conduct and the judge must strive to appear impartial and detached." (Citation omitted; internal quotation marks omitted.) *State* v. *Pharr*, 44 Conn. App. 561, 570, 691 A.2d 1081 (1997). Despite the fact that we do not agree with the defendant that the court "strongly warned him against testifying" and actually interfered with his decision to testify, we nonetheless note that the court should not have made certain of the remarks that it did.

## II

The defendant next claims that the court's ruling on his motion in limine had a chilling effect on his right to testify. We disagree.

The defendant claims that after he indicated that he wanted to testify, he asked the court to restrict the state's use of his prior criminal history and requested that the court inform him of the specific convictions that it would permit the state to delve into during cross-examination. We set forth a significant part of that colloquy in part I.

The record reflects the court's ruling with regard to the defendant's Connecticut convictions. The prosecutor indicated to the court that depending on the defendant's testimony, he might seek to question him concerning his out-of-state convictions, as well. The following colloquy, in relevant part, occurred:

"[The Prosecutor]: And, obviously, if the defendant opens the door with regard to his entire criminal record, then I would proceed as I believe proper, Your Honor, noting that he has convictions out of this state also and in other states, Your Honor.

"The Court: Are those felonies also?

"[The Prosecutor]: At this time, I cannot state if they are or not, Your Honor. I would have to go through [the defendant's criminal record] more thoroughly.

"The Court: Okay. So, if those out-of-state convictions are felonies also, you may end up being cross-examined on those as well.

"[The Defendant]: Are you allowing that in as—are those going to be the specific offenses that he's going to be cross-examining me with?

"The Court: The out-of-state ones or the in-state ones?

"[The Defendant]: The in-state and the out-of-state. Are you going to allow—

"The Court: Okay, the in-state ones, from what I've heard so far, it sounds like the two [convictions of]

robbery [in the third degree], the two prior persistent larceny offenders and the [conviction of] larceny [in the third degree] are all relevant. They're all felonies. They all go directly to credibility, which is a highly contested issue in this case, and I will instruct the jury on how they are to use those in determining . . . credibility. With respect to the out-of-state offenses, I don't know yet what they are or whether they're felonies. If the state can show me that they're felonies, I may admit those as well.

"[The Defendant]: Well, some of that out-of-state stuff is still pending, Your Honor. So, the out-of-state doesn't wish to extradite on those matters. So, I think that would probably—

"The Court: Well, you know more than I do.

"[The Defendant]: Right.

"The Court: If you think they're not admissible, then that's part of your calculation, not mine."

The defendant now claims that the court's ruling on his motion in limine was incomplete because it did not conclusively address the admissibility of his out-of-state convictions. The defendant argues that he alerted the court to the fact that its ruling on that issue was an important factor in his decision on whether to testify and that there was "no reason why the trial court could not have made a complete ruling [on his prior criminal convictions], including the out-of-state convictions, prior to the defendant testifying." The defendant claims that leaving unresolved the issue of the admissibility of the out-of-state convictions "greatly deterred [him] from exercising his right to testify." In reviewing the claim, we are guided by the same constitutional principles that we applied in part I.

The defendant's claim is without merit. The defendant indicated that he wanted to testify after he had

indicated that he would not testify. The prosecutor represented to the court that he was not prepared to cross-examine the defendant and, accordingly, that he had not reviewed thoroughly the defendant's entire criminal record. The court indicated its ruling with regard to the defendant's in-state convictions because the prosecutor conveyed the details of such convictions to the court. The prosecutor represented that he was unsure whether the out-of-state convictions were felonies. The court clearly informed the defendant that if they were, the court might deem them appropriate subject matter for cross-examination.

The court ruled on the defendant's motion to the best of its ability, given the available facts. The court fully apprised the defendant of how it would rule with regard to his out-of-state convictions, thereby affording him a reasonable opportunity to incorporate that factor into his decision on whether to testify. Accordingly, we conclude that the court's ruling on the defendant's motion in limine did not adversely affect the defendant's exercise of his right to testify.

### III

The defendant finally claims that the court improperly admitted certain evidence of his illegal drug use. We disagree.

The record reflects that prior to trial, the defendant filed a motion in limine seeking an order precluding the state from introducing any evidence of his use of illegal drugs. The court deferred ruling on the admissibility of such evidence until trial.

During his cross-examination of Cavin, the defendant introduced the police report of the incident, and the court admitted the report as a full exhibit after reminding the defendant that the report would then be "going to the jury." The defendant questioned Cavin

about her statements contained in the report. Later, the prosecutor used the defense exhibit in his direct examination of Daniel Parlapiano, the Manchester police officer who issued the report. In response to a question by the prosecutor, Parlapiano read aloud an excerpt from his report that included the following statements: "[The defendant] told me that, while he was being booked, that he had a bad drug abuse problem. [The defendant] said that he had been using heroin and crack cocaine on and off for the last twenty years. [The defendant] said that his drug problem had become worse over the last couple of months."

The defendant did not object to that testimony, but objected to the state's questioning about his prior criminal history. In the course of his objection, the defendant nonetheless argued that further references to his use of illegal drugs would be "excessive." The state argued that the defendant had made certain admissions concerning his drug use and that they were relevant to the issue of his motive. The court sustained the defendant's objection with regard to his prior criminal convictions. The court, however, ruled that the defendant's admission with regard to his drug dependency noted in the police report was admissible as being relevant to the issue of the defendant's motive. The court noted that it would consider any other objections with regard to evidence of the defendant's use of illegal drugs as such objections arose during the trial. Immediately thereafter, the court limited the jury's use of such evidence, instructing that the jury was to consider it solely "on the issue of motive and [the defendant's] intent to commit the larceny, and for no other purpose."

The prosecutor thereafter introduced other evidence relating to the defendant's use of illegal drugs. Absent objection, the court admitted the following statement made by the defendant from the transcript of the defendant's arraignment hearing: "I mean, if anything, I'll

plead guilty if I can get some type of treatment program right now."

The prosecutor also sought to introduce certain excerpts from a letter, dated August 22, 2001, sent by the defendant to the office of the state's attorney. The defendant immediately objected to the admission of excerpts from the letter, and the court sustained the defendant's objection in part, disallowing certain statements in the letter. The court admitted into evidence the following excerpt over the defendant's objection: "Having relapsed on the day of my arrest [8-8-01] . . . smoking 'crack' cocaine at an unbelievable rate, I must sincerely say that my eventual arrest was an honest-to-God reality check! Because as it stood, I was 'blinded' by an uncontrollable desire to obtain more money to buy more 'crack,' not thinking or caring about my exposition as a barber or my 'current' enrollment in the Connecticut Institute of Hair Design . . . ."

The court ruled that the evidence was more probative than prejudicial, especially in light of the fact that the defendant had attempted to impeach Parlapiano's testimony with regard to the comments in the police report pertaining to the defendant's use of illegal drugs. The court ruled that "this particular admission on the part of the defendant, that he in essence was stealing in an effort to obtain money to buy drugs, again goes to his motive and his intent, which are both very significant issues in this case, especially in light of the defense which has been put forth by the defendant in this case, or attempted to be put forth." The court further explained to the defendant: "Whether or not this is evidence of your motive, it's circumstantial evidence of your motive, and the jury's entitled to infer what [it wants] from the comments . . . ."[5]

---

[5] In its charge, the court again instructed the jury how to use the evidence of the defendant's use of illegal drugs. The court stated: "That evidence was not being admitted to prove the bad character of the defendant or his tendency to commit criminal acts. Such evidence was introduced by the

On appeal, the defendant now challenges only the admission into evidence of that part of his letter to the prosecutor that previously was set forth. The defendant argues that because there was no evidence of the cost of his drug habit or of his ability to finance such habit, the court improperly concluded that the evidence was relevant to the issue of his motive to commit the crime. Further, the defendant argues that the admission of that allegedly irrelevant evidence was harmful because it was prejudicial and likely affected the verdict.

An evidentiary ruling will be overturned on appeal if it (1) reflects a clear abuse of the court's discretion and (2) caused the appellant prejudice or injustice. When reviewing a trial court's evidentiary ruling, we make every reasonable presumption in favor of upholding the ruling. *State* v. *Salters*, 78 Conn. App. 1, 12, 826 A.2d 202, cert. denied, 265 Conn. 912, 831 A.2d 253 (2003).

Larceny is a specific intent crime; the state bore the burden of proving beyond a reasonable doubt that the defendant intended to deprive an owner permanently of his or her property. *State* v. *Calonico*, 256 Conn. 135, 160, 770 A.2d 454 (2001). Rarely is there direct evidence of a felonious intent; such intent is proven generally

state merely to show or establish the existence of intent, which is a necessary element of the crime of larceny, or a motive on the part of the defendant for the commission of larceny or to corroborate crucial prosecution testimony. You may not consider such misconduct evidence as establishing a predisposition on the part of the defendant to commit the crime charged or to demonstrate a criminal propensity. You may consider this evidence only on the issues of intent, motive or corroboration and for no other purpose. You may consider such evidence if you believe it and, further, find it logically and rationally and conclusively supports the issues for which it is being offered by the state, but only as it may bear on the issues of intent, motive or corroboration.

"On the other hand, if you do not believe such evidence, or even if you do, if you find that it does not logically, rationally and conclusively support the issues for which it is being offered by the state, namely, intent, motive or corroboration, then you may not consider that testimony for any purpose."

by circumstantial evidence. See *State* v. *Feliciano,* 256 Conn. 429, 453, 778 A.2d 812 (2001).

If evidence makes the existence of a fact that is material to an issue in the case more or less probable, even to a slight degree, then it is relevant. See Conn. Code Evid. § 4-1, commentary. Here, the challenged evidence concerned circumstances from which the jury might reasonably infer the defendant's motive and, thus, his intent. In the excerpt from the letter, the defendant stated that he had relapsed on the day of his arrest, that he was using crack cocaine "at an unbelievable rate," that he was " 'blinded' by an uncontrollable desire to obtain more money to buy more 'crack' " and that he "was not thinking or caring" about his enrollment in a legitimate educational program. That evidence, depicting in the defendant's words his mindset on the day of the incident, certainly made it more probable than not that the defendant intended to steal from Filene's to obtain more money to buy drugs. In fact, that evidence was highly probative of the defendant's motivations on the day of his arrest and, therefore, made the existence of a felonious intent highly likely. The defendant's admissions in his letter belies his claim that the state failed to demonstrate that his drug habit motivated his criminal actions.

Further, we conclude that the court properly determined that any prejudicial impact of the evidence was outweighed by its significant probative value. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ." Conn. Code Evid. § 4-3. Prejudice is unfair if it has a tendency to unduly arouse the jury's feelings of prejudice, hostility or sympathy or has an adverse effect "beyond tending to prove the fact or issue that justified [the evidence's] admission . . . ." (Internal quotation marks omitted.) Conn. Code Evid. § 4-3, commentary. Although the defendant argues that the evidence of his

drug use likely caused the jury to believe that he lived "a life of crime," the defendant, himself, either presented to the jury or consented to the state's presenting other evidence of his drug use. Further, the court specifically instructed the jury to limit the use of the evidence for the purpose for which it was introduced by the state. The evidence was not of such a nature as to compel a belief that it would have any adverse affect on the jury beyond the purpose that justified its admission. See *State* v. *Feliciano*, supra, 256 Conn. 454.

There was no abuse of discretion. We need not consider whether the court's ruling was harmful to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.